IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARGARET KINSEL                  §
                                 §
v.                               §          C.A. NO. C-09-134
                                 §
MICHAEL ASTRUE                   §

**MEMORANDUM AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Margaret Kinsel brought this action on June 15, 2009 seeking review of the Commissioner's final decision that she is not disabled and, therefore, not entitled to disability insurance benefits.  (D.E. 1).  On December 11, 2009, Defendant filed a cross-motion for summary judgment.  (D.E. 7).  On January 29, 2010, Plaintiff filed a cross-motion for summary judgment, (D.E. 10), with a brief in support.  (D.E. 11).  Defendant filed a response to the cross-motion on February 16, 2010.  (D.E. 12).  For the reasons stated herein, it is respectfully recommended that Plaintiff's cross-motion for summary judgment be granted and the case be remanded.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).

## II.  BACKGROUND

On June 23, 2004, Plaintiff filed an application for a period of disability and disability insurance benefits.  Tr. 53.  At that time, she was fifty years old and had previously worked as a manual letter clerk for the United States Postal Service for nineteen years and eleven months.  Tr. 53, 465.  Initial review by the Social Security Administration concluded that she was not disabled, and her application was denied on February 11, 2005.  Tr. 48.  She filed an appeal, which was similarly denied on March 6, 2006.  Tr. 42.  On June 7, 2006, she requested a hearing before an administrative law judge ("ALJ") to review her application.  Tr. 39.  After an August 1, 2007 hearing, the ALJ issued a decision on October 12, 2007 again denying Plaintiff's application based on the finding that she was not disabled.  Tr. 13-21.

Plaintiff's original alleged onset date was December 25, 2000, but that was amended to May 1, 2005 at her hearing.  Tr. 476.

A.    **Plaintiff's Medical Records.**

On January 11, 2001, Dr. Charles Breckenridge, a shoulder specialist, diagnosed Plaintiff with right elbow lateral epicondylitis and symptomatic posterior interosseous nerve entrapment in her forearm.  Tr. 163-64.  He recommended that she reduce any repetitive motion at work and prescribed her Celebrex and a forearm armstrap.  Id.  On follow-up visits, Plaintiff underwent an

2

MRI and Dr. Breckenridge further diagnosed degenerative disc disease with herniated C5-6 vertebrae.  Tr. 134, 162.  He placed her on prescription medicines to complement range of motion exercises and physical therapy.  Tr. 162.  Plaintiff received physical therapy, improving the range of motion in her arm and shoulder, but her strength did not improve.  Tr. 136.  On March 16, 2001, she visited Dr. John Masciale, a spine surgeon, who instructed her to cease working for the time being and recommended she receive cervical epidural steroid injections.  Tr. 158-60.  She continued to work, and on October 19, 2001, Dr. Breckenridge also recommended she at least cut back on her work duties and any overhead activity.  Tr. 153-54.  He again prescribed physical therapy, which she received three times per week from October 23, 2001 to November 15, 2001and improved her range of motion, strength, and pain.  Tr. 135, 153-54.

Even though physical therapy provided Plaintiff with some relief, she was seen by Dr. John Borkowski on November 30, 2001, another spine surgeon, who was not satisfied with the results and recommended she undergo two-level diskectomy and fusion surgery.  Tr. 152.  A neurologist, Dr. Michael Geiger, concurred with this course of action.  Tr. 426-28.  As a result, on March 25, 2002, Dr. Borkowski and Dr. Masciale performed diskectomy surgery on her C6-7 and C5-6 vertebrae, an anterior interbody fusion, and a fibular allograft.  Tr. 165-66.  They also implanted a titanium plate.  Id.

3

After the surgery, Plaintiff still had pain in her neck and arm, but it was improved.  Tr. 147, 149.  She was limited in her work duties by Dr. Borkowski and given Depo Medrol and Xylocaine.  Tr. 144.  She also continued therapy, going thirteen times from October 15, 2002 to November 26, 2002, which reduced her pain by thirty percent, but still left her experiencing pain while performing some tasks at work.  Tr. 187.  On August 21, 2002, Plaintiff followed up with Dr. Borkowski and was still experiencing pain.  Tr. 142-43.  He noticed an impingement on her shoulder and attributed her pain to the repetitive motions she performed at work.  Id.

On November 8, 2002, Plaintiff saw Dr. Breckenridge again, and he diagnosed her with right shoulder rotator cuff tendinosis with impingement syndrome, as well as acromioclavicular joint hypertrophy, which caused impingement.  Tr. 138-40.  On March 27, 2003, Dr. Borkowski conducted an arthroscopic exploration of her shoulder, which verified the existence of the impingement.  Tr. 198-200.  To remedy the problem, he performed arthroscopic subacromial decompression and arthroscopic distal clavicular excision.  Id.

Months later, Plaintiff was working again, but on light duty, and was still experiencing pain.  Tr. 345-55.  Dr. Breckenridge limited her overhead activity yet again, and she continued her physical therapy three times a week in November 2003.  Tr. 345-55, 221.  She achieved a reduction in pain and increased mobility,

4

but fell short of full range of motion.  Tr. 221.

On May 5, 2004, Dr. Breckenridge recommended that Plaintiff could return to work, but restricted her from lifting anything over five pounds, doing any overhead work, or engaging in any repetitive activity.  Tr. 348.  Thereafter, on June 19, 2004, Dr. Borkowski noticed a new disc bulge under the location of Plaintiff's surgically fused disks, and she reported feeling numbness in her right hand.  Tr. 345.  Three days later, after reports of elbow pain, Dr. Breckenridge diagnosed her with right elbow medial and lateral epicondylitis, and prescribed Lidocaine and Depo Medrol.  Tr. 346.  He modified Plaintiff's work restrictions on August 3, 2004 to restrict her from lifting more than five pounds, pushing or pulling ten pounds, climbing, more than four hours of grasping a day in divided times, doing any overhead work, operating any machinery, or performing any repetitive work, and recommended she always take two days off consecutively.  Tr. 345.

On September 7, 2004 and January 18, 2005, Plaintiff received cervical epidural steroid injections to alleviate her neck and shoulder pain, which were not as effective as hoped.  Tr. 330, 319, 366.

Additionally, Dr. Robert Tschauner reported seeing Plaintiff on July 26, 2005 for complaints of irritable bowel syndrome, which she had suffered for over thirty years and caused her to experience watery bowel movements five to six times a day, but as many as twelve times a day.  Tr. 390, 416.

**B.      The August 1, 2007 Administrative Hearing.**

On August 1, 2007, the ALJ Gary L. Vanderhoof  held a hearing on

Plaintiff's disability claim.  Tr. 454.  Kathleen Day represented Plaintiff.  Tr. 455.

A medical expert, Dr. Dorothy Leong, and a vocational expert, Donna Johnson,

testified at the hearing.  Tr. 454.

At the hearing, Dr. Leong testified that Plaintiff should be allowed to return

to light work with restrictions.  Tr. 459.  She opined Plaintiff should be allowed to

lift and carry twenty pounds occasionally and ten pounds frequently; limited to

standing and walking no more than six hours a days, and sitting no more than six

hours a day; and limited to occasionally reaching overhead with her right arm.  Id.

Upon examination by Ms. Day, Dr. Leong, a "physical medicine and

rehabilitation doctor," explained that she disagreed with the limitations set by Dr.

Breckenridge, a shoulder surgeon, because she had "successful ... decompression

surgery" on her right shoulder, had been receiving physical therapy, her forward

elevation was one hundred and sixty degrees, her external rotation was fifty

degrees, and she had a "mild positive spurring sign" in the neck's range of motion.

Tr. 460-61.

Plaintiff, with less than two years of college education, testified that her job

as manual letter clerk required her to sort mail by hand into "pigeon holes."  Tr.

465.  The job mainly involved her leaning back against a "rest bar," reading

6

addresses on envelopes, and repetitively placing letters in the pigeon holes, some of which were almost too high for her five-foot two-inch frame to reach.  Tr. 466-68.  She would also sometimes have to lift twenty to thirty-pound bundles of mail and throw them into racks.  Tr. 475.  The repetitive motions caused injuries to her cervical spinal discs and right shoulder, and she suffered related headaches.  Tr. 466-68.  These problems often caused her to miss periods of work, and to address them, she underwent cervical fusion surgery, shoulder surgery, and physical therapy, which provided some relief, but the pain always returned when she resumed working.  Id.  Even after the surgeries, she was never able to resume all her former duties, instead performing whatever work could be found for her, which was never enough to fill her eight-hour workday.  Tr. 466-68.  As a result, she left her position with the postal service on medical disability retirement.  Tr. 465.

Plaintiff doubts her ability to return to a job.  Tr. 469-76.  She still is limited from raising her right arm too high without pain.  Id.  She also continues to have headaches, which, even with medication, force her to lie down for a few hours until the pain subsides.  Id.  She also suffers from Gastroesophageal Reflux Disease, irritable bowel syndrome, depression, anxiety, and tingling and numbness in her extremities, which she believes would affect her ability to work.  Id.  Finally, she testified that lifting more than five to seven pounds causes her pain.  Id.  She also cites memory loss as a hurdle to returning to a position such as her old one.  Id.

The ALJ posed the following hypothetical to the vocational expert:

> I'd like you to assume an individual who had an original
> onset age 46 ... currently 53.  She indicated she is a few
> credits hours short of a college, a two-year college
> education.
> ...
> I'm going to impose these restrictions.  I would have, just
> limited overhead reaching regarding the right upper
> extremity.  She said in her own report she had difficulty
> in doing her hair, so I'm going to limit the right-hand
> overhead reaching, and I'm going to restrict her to a
> maximum lift and carry 20 pounds occasionally, 10
> pounds frequently....  And I'm going to also limit her
> from balancing activities, as well as climbing ladders,
> ropes or scaffolds or working at unprotected heights
> around dangerous moving machinery.  For this hypothet
> [sic], I would find she could stand and walk six of eight
> hours, sit six of eight with the normal break periods, and
> occasional posturial stoop, stand, walk, and stoop, stand,
> crouch crawl.

Tr. 477-78.  Ms. Johnson opined that such a hypothetical person could have

worked in Plaintiff's old position were it not for the overhead reaching.  Tr. 479.

She went on to list "counter clerk," "rental clerk," "floor attendant" in a game

room, "apparel checker," "garment bagger," and "sales attendant" as positions that

would fit the hypothetical, and were available in Texas and throughout the country.

Tr. 480-81.  However, she noted that Plaintiff would be terminated from any of

these positions if she missed two days a month because of headaches, panic

attacks, doctor appointments, etc.  Tr. 482.  She further opined Plaintiff would not

8

be able to hold these positions or any other if she had to take breaks every ten to fifteen minutes because of headaches, panic attacks, medication, etc., or had to visit the restroom six to twelve times a day.  Tr. 483, 488.  Moreover, she also agreed with the ALJ that Plaintiff would be precluded from these positions if she could not lift more than seven pounds.  Id.  After being questioned whether there were any jobs Plaintiff could perform at the sedentary work level, she answered affirmatively that Plaintiff could hold the positions of service clerk, identification clerk, and compiler, all of which were available in Texas and the national economy.  Tr. 487-88

## C.    The ALJ's Decision.

On October 12, 2007, the ALJ issued an unfavorable decision for Plaintiff. Tr. 13-21.  He found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, and she had not engaged in substantial gainful activity since the amended alleged onset date of May 1, 2005 through the date of his decision.  Tr. 15.  He also found that Plaintiff suffered from the severe impairments of "degenerative disc disease cervical spine" and "history of shoulder arthroscopy," but that these did not meet or medically equal a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 CFR 404.1520(d), 404.1525 and 404.1526), either alone or in combination with each other.  Id.  As a result, the ALJ

9

next determined Plaintiff had the ability to work:

> [She] had the residual functional capacity to perform
> light work and can sit, stand and walk 6 hours in an 8
> hour day with normal breaks.  There would be no
> climbing of ladders, ropes or scaffolds, no work at
> unprotected heights or around dangerous moving
> machinery.

Tr. 16.  He concluded that Plaintiff's reported symptoms suggested more severe

conditions than actually existed.  Tr. 16-19.  Supporting that conclusion, he noted a

lack of medical evidence such as X-rays and CT scans to corroborate Plaintiff's

spinal and neck pain.  Tr. 17.  Furthermore, he questioned the existence and

severity of headaches because there was no record of emergency room visits or

narcotic medications for headaches.  Tr. 17-18.  Additionally, there was no clinical

evidence of GERD, irritable bowel syndrome, asthma, severe depression, or

neuropathy from diabetes, all of which Plaintiff claims she had.  Tr. 18.

The ALJ noted he did not find Plaintiff to be credible regarding the extent of

her pain and the resulting limitations on her work and daily life.  Id.  Conversely,

he did find the medical expert, Dr. Leong, to be credible in her opinion.  Tr. 19.

The ALJ went on to find that Plaintiff was unable to perform her old job

with the postal service because it "required lifting more than 20 pounds and

frequent overhead lifting," but that considering her "age, education, work

experience, and residual functional capacity, there were jobs that existed in

10

significant numbers in the national economy that [she] can perform." Id.  As a result, Plaintiff was found to not be disabled.  Tr. 20-21.

## III.  LEGAL STANDARDS

**A.     Social Security Act Disability Benefits Requirements.**

The same law and regulations govern whether an individual is considered disabled and therefore entitled to benefits under either the disability insurance benefits or the supplemental security income benefits provisions of the Social Security Act.  Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989) (per curiam) (citations omitted).  Specifically, the Social Security Act establishes that every individual who is insured for disability insurance benefits, has not attained the set retirement age, has filed an application for disability benefits, and is under a disability is entitled to receive disability benefits.  42 U.S.C. § 423(a)(1).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that a claimant is not disabled if that person can perform jobs available in the national economy:

> An individual shall be determined to be under a disability
> only if his physical or mental impairment or impairments

11

are of such severity that he is not only unable to do his
previous work but cannot, considering his age, education,
and work experience, engage in any other kind of
substantial gainful work which exists in the national
economy, regardless of whether such work exists in the
immediate area in which he lives, or whether a specific
job vacancy exists for him, or whether he would be hired
if he applied for work.  For purposes of the preceding
sentence ... "work which exists in the national economy"
means work which exists in significant numbers either in
the region where such individual lives or in several
regions of the country.

42 U.S.C. § 423(d)(2)(A).

**B.      Social Security Administration Regulations and Rulings.**

To determine if an individual suffers from a disability, as defined by the

Social Security Act, the Commissioner has promulgated regulations containing a

five-step sequential process to be used by the Social Security Administration.  20

C.F.R. §§ 404.1520, 416.920.  A disability finding at any point in the five-step

sequential process is conclusive and ends the analysis.  Villa v. Sullivan, 895 F.2d

1019, 1022 (5th Cir. 1990) (citation omitted).

A claimant bears the burden of proof on the first four steps.  Bowling v.

Shalala, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citation omitted).  The

claimant must prove that: (1) he is not presently engaged in substantial gainful

activity; (2) he suffers from an impairment or impairments that are severe; and that

either (3) the impairment meets or equals an impairment listed in the appendix to

the regulations; or (4) due to the claimant's RFC, the impairment prevents the claimant from doing any past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowling, 36 F.3d at 435; Villa, 895 F.2d at 1022.

The Fifth Circuit has held that "[t]he first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities."  Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000) (citations omitted).  The Commissioner may find that a claimant's impairment fails to meet the significant limitation requirement of step two "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  Id. at 391 (quoting Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985)).

Step three requires a claimant to prove that any of his impairments meet one or more of the impairments listed in the regulations, which include both physical and mental impairments.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The criteria for determining the severity of the listed mental impairments look at whether there is marked interference with activities of daily living, social functioning, concentration, persistence or pace, and repeated episodes of decompensation.  Id. at

Pt. A § 12.00(C).  The regulation defines "episodes of decompensation" as
"exacerbations or temporary increases in symptoms or signs accompanied by a loss
of adaptive functioning, as manifested by difficulties in performing daily activities
of living, maintaining social relationships, or maintaining concentration,
persistence, or pace."  Id. at Pt. A § 12.00(C)(4).  The claimant must present
evidence that the impairment is a long-term problem rather than a temporary set-
back, but "does not have to show a 12 month period of impairment unmarred by
any symptom-free interval."  Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir.
2000) (citations omitted).

Pursuant to the fourth step, a claimant who is unable to show that his
impairment meets one of the listed impairments must show that he is unable to
perform his past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The claimant's
RFC is taken into consideration to determine whether the claimant's impairments
may cause physical and mental limitations that affect his or her ability to work.  20
C.F.R. §§ 404.1545, 416.945.  The RFC is the most a claimant can do despite any
limitations caused by an impairment.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
All relevant evidence in the record, including medical and non-medical evidence, is
taken into consideration by the Commissioner when making a determination of a
claimant's RFC.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The Commissioner must consider all of plaintiff's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and non-medical evidence in the record.  SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).  "[T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Id. at *2.  When a claimant's statements concerning symptoms and their associated limitations "are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  Id.

The adjudicator's discussion of a claimant's RFC must thoroughly discuss and analyze the objective medical and other evidence in relation to the symptoms.  SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).  This discussion must include a resolution of any inconsistencies in the record, address a logical explanation of effects of the alleged symptoms on the individual's ability to work, contain a determination of why symptom-related functional limitations can or cannot be reasonably accepted as consistent with medical or non-medical evidence, and address any medical opinions contained in the record.  Id.

If the claimant is able to meet his burden under the first four elements, the

15

burden shifts to the Commissioner for the fifth.  Bowling, 36 F.3d at 435.  The fifth

step requires the Commissioner to determine, based on the claimant's RFC, age,

education, and work experience, if the claimant can make an adjustment to other

work that exists in significant numbers in the national economy.  20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot make an adjustment to

other work, the claimant is disabled.  Id.

## C.      Judicial Review Of The ALJ's Decision.

Judicial review of the Commissioner's decision regarding a claimant's

entitlement to benefits is limited to two questions: (1) whether substantial evidence

supports the Commissioner's decision; and (2) whether the decision comports with

relevant legal standards.  See Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000)

(citations omitted).  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  Richardson v. Perales,

402 U.S. 389, 401 (1971) (citation omitted); accord Carey, 230 F.3d at 135.  The

Fifth Circuit has described this burden as more than a scintilla, but less than a

preponderance.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995) (citation

omitted).  A finding of "no substantial evidence" occurs "only where there is a

'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam) (citation

omitted).

If the Commissioner's findings are supported by substantial evidence, the Court must defer to the Commissioner, and affirm the findings.  See Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002) (citation omitted).  In applying the substantial evidence standard, courts scrutinize the record to determine whether such evidence is present.  They, however, do not reweigh the evidence, try the issues de novo, or substitute their judgment for that of the Commissioner.  Id.; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).  Factual conflicts that exist in the record are for the Commissioner and not the Court to resolve.  Masterson, 309 F.3d at 272.  It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history."  Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam) (citation omitted).

## IV.  ANALYSIS

Defendant argues summary judgment should be granted in his favor because the ALJ's final decision that Plaintiff was not disabled was supported by substantial evidence, and the ALJ followed correct legal standards in reaching his

decision.  (D.E. 7).  Plaintiff claims that the ALJ's decision that she was not disabled was not supported by substantial evidence.  (D.E. 1).  Specifically, she asserts that the ALJ failed to express a good cause reason for rejecting the opinion of her treating physician, and the ALJ presented a defective hypothetical to the vocational expert.  (D.E. 11).

**A.     The ALJ Failed To Explain The Weight Given To The Opinion Of Plaintiff's Treating Physician.**

The Fifth Circuit has explained that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."  Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original).  These criteria include:

(1) the physician's length of treatment of the claimant,

(2) the physician's frequency of examination,

(3) the nature and extent of the treatment relationship,

(4) the support of the physician's opinion afforded by the medical evidence of record,

(5) the consistency of the opinion with the record as a whole, and

(6) the specialization of the treating physician.

18

Id. at 456 (citing 20 C.F.R. § 404.1527(d)(2)).  Even when a treating physician's

opinion does not meet the test for controlling weight, it is still entitled to deference.

Id. (citation omitted).  In rejecting the opinion of a treating physician, or affording

it little weight, an ALJ must consider each and every one of these six criteria.  Id.

(citations omitted).  Failure to do so warrants remand of the case so that the

analysis may be conducted.  See id.

　　　　Here, the ALJ failed to discuss the opinion of the treating physician, Dr.

Breckenridge, let alone the weight it was afforded, even though the residual

functional capacity directly contradicted Dr. Breckenridge's opinion that Plaintiff

should be limited to lifting no more than five pounds, which qualifies as less than

sedentary work.  Tr. 484.  Instead, the ALJ found that Plaintiff was able to do light

work, which is more demanding, based on the testimony of the medical expert and

vocational expert, as well as the medical record.  Tr. 15-20.  However, nowhere in

his report does he mention Dr. Breckenridge, his opinion, or any of the six

§ 404.1527(d)(2) factors that should have been considered.  These omissions

resulted even though Dr. Breckenridge's opinion was included in the record, Tr.

345, and discussed at the hearing.  Tr. 483-85.

　　　　Defendant stresses that Dr. Breckenridge conveyed varying opinions of

Plaintiff's work abilities over time; that at certain times, he limited her only to light

work.  (D.E. 12, at 2-3).  Importantly, though, his opinions changed over the course of years as Plaintiff's health deteriorated.  Essentially, a physician's most recent opinion regarding a patient's condition is the most relevant to a discussion such as this one, and it is indeed Dr. Breckenridge's most recent opinion that limits Plaintiff to lifting no more than five pounds.  Additionally, Defendant points to medical observations by Dr. Edwards seemingly to attempt to controvert Dr. Breckenridge's opinion.  (D.E. 12, at 3).  However, these observations focused only on a singular aspect of Plaintiff's condition – her pain level immediately after receiving steroid injections – while Dr. Breckenridge's more comprehensive opinion concerns Plaintiff's overall condition and physical abilities from a long-term perspective.

Accordingly, it is respectfully recommended that the ALJ erred in failing to conduct a § 404.1527(d)(2) analysis.

**B.    The Difference Between The Medical Expert's Opinion And The ALJ's Hypothetical Question Did Not Render The Hypothetical Defective.**

Plaintiff claims that the ALJ could not afford the vocational expert's testimony any weight because the ALJ's hypothetical was defective.  (D.E. 11, at 11-12).  Therefore, she claims the ALJ's finding is not supported by substantial evidence.  Id. at 14.  She limits this attack to the basis that the hypothetical "did not sufficiently describe" a restriction for overhead lifting recommended by the

20

medical expert.  Id. at 12.  Specifically, the medical expert opined that she should be "limited to occasionally" reaching overhead with her right arm.  Tr. 459.  The ALJ's subsequent hypothetical restricted her to "limited overhead reaching regarding the upper right extremity."  Tr. 477.

For a hypothetical to be proper, it "need only incorporate the disabilities that the administrative law judge recognizes."  Wise v. Barnhart, 101 F. App'x 950, 951 (5th Cir. 2004) (per curiam) (unpublished) (citing Bowling, 36 F.3d at 435; Morris v. Brown, 864 F.2d 333, 336 (5th Cir. 1988)).  This is accomplished if the hypothetical incorporates the plaintiff's RFC.  See White v. Astrue, 240 F. App'x 632, 634 (5th Cir. 2007) (per curiam) (unpublished) ("Because the VE's testimony, which [plaintiff] did *not* challenge through cross-examination, was elicited by hypothetical questions incorporating the RFC determination, such reliance was proper.") (citing Bowling, 36 F.3d at 436).

On the other hand, in the Fifth Circuit, a finding of non-disability that is based on a defective hypothetical cannot stand:

> unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's

> findings and disabilities recognized but omitted from the
> question)....

Bowling, 36 F.3d at 436.  Moreover, an incomplete hypothetical will not be

automatically saved solely because a claimant fails to point out its deficiencies at

the hearing.  Boyd v. Apfel, 239 F.3d 698, 707 (5th Cir. 2001) (citing Bowling, 36

F.3d at 436).  Indeed, the Fifth Circuit has found that relying upon the vocational

expert's testimony was reversible error when the ALJ grossly misrepresented what

he had determined were the plaintiff's residual functional capacities, excluded

serious medical conditions affecting the plaintiff, or stated that a plaintiff's

condition had improved when, in reality, it had not.  See Bowling, 36 F.3d at 436-

37 (the ALJ's hypothetical was defective because it allowed for the claimant to lift

50 pounds after the ALJ already decided, as part of the claimant's RFC, that he

could not lift more than 20 pounds, and the ALJ misrepresented the status of a

medical condition affecting the claimant's kidneys, implying that it was resolved

when it was not); see also Bordelon v. Barnhart, 161 Fed. App'x 348, 353 (5th Cir.

2005) (per curiam) (unpublished) (hypothetical questions posed by the ALJ were

found to be defective because they did not include the plaintiff's "severe mental

impairment of paranoid schizophrenia").

Here, Plaintiff would have the Court require the ALJ to incorporate the

medical expert's testimony into his hypothetical, but this is not the law in the Fifth

Circuit.  The ALJ heard the medical expert's testimony before determining the Plaintiff's RFC, but he was not required to incorporate any part of it into the hypothetical that was not also incorporated into the Plaintiff's RFC.  Rather, the hypothetical need only be based on the RFC determined by the ALJ, and in this case, her RFC contained no limitations on overhead reaching.

Furthermore, Plaintiff exaggerates any difference in the medical expert's opinion and the ALJ's hypothetical.  The medical expert opined that Plaintiff should be "limited to occasionally" reaching overhead with her right arm, and the ALJ's hypothetical restriction was "limited overhead reaching regarding the upper right extremity."  Tr. 459, 477.  This facial disparity is indistinguishable.

Accordingly, it is respectfully recommended that the hypothetical's variance from the medical expert's opinion did not render it defective.

## C.     The ALJ's Error Was Not Harmless.

The Fifth Circuit has determined that district courts reviewing denials must apply a harmless error analysis.  Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) ("Having determined that the ALJ erred in failing to state any reason for her adverse determination at step 3, we must still determine whether this error was harmless.") (citation omitted).  The Audler court further explained that "'[p]rocedural perfection in administrative proceedings is not required' as long as

'the substantial rights of a party have not been affected.'" Id. (citation omitted).

Plaintiff's substantial rights have been affected because the restrictions imposed by Dr. Breckenridge would have limited Plaintiff to lifting no more than five pounds, which equates to less than sedentary work.  20 C.F.R. § 404.1567(a). This limitation would have categorized Plaintiff as disabled because of her combination of age, education, and previous work experience.  20 C.F.R. § 404, Subp. P, App. 2, Table No. 1.  Therefore, the ALJ's finding that Plaintiff was capable of light work prevented her from receiving disabled status as a matter of course.  Accordingly, it is respectfully recommended that the ALJ's error was not harmless.

## V.  <u>RECOMMENDATION</u>

Based on the foregoing reasons, it is respectfully recommended that Defendant's cross-motion for summary judgment, (D.E. 7), be denied, that Plaintiff's cross-motion for summary judgment, (D.E. 10), be granted, and that the case be remanded to the Social Security Administration for further proceedings consistent with this memorandum and recommendation.

Respectfully submitted this 2nd day of April 2010.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).